CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 1 4 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CYRIL G. EDWARDS, <br>     Plaintiff, | ) <br> ) <br> )   Civil Action No. 7:06cv00643 |
| v. | ) <br> ) |
| MICHAEL ASTRUE, <br> COMMISSIONER OF SOCIAL SECURITY, <br>     Defendant. | )  By:  Hon. Michael F. Urbanski <br> )         United States Magistrate Judge <br> ) <br> ) |

## MEMORANDUM OPINION

Plaintiff Cyril G. Edwards ("Edwards") brought this action for review of the Commissioner of Social Security's decision denying Edwards' claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383, ("Act"). The parties have consented to the undersigned's jurisdiction, and the case is before the court on cross motions for summary judgment. Having reviewed the record, and after briefing and oral argument, the case is now ripe for decision. Because the Commissioner's decision is amply supported by substantial evidence and was legally correct, there is no basis for reversal or remand. Accordingly, the defendant's motion for summary judgment must be granted and this appeal dismissed.

I.

Edwards is a younger individual, born on July 27, 1966. (Administrative Record [hereinafter R.] at 47, 214) Edwards has a seventh grade education and past work experience as a truck driver, autobody mechanic, painter, and security guard. (R. 54, 59, 214, 217-218)

Edwards filed an application for DIB and SSI on or about March 10, 2005, alleging that he became disabled on October 1, 2000, due to pancreatitis, kidney problems, asthma, and knee, wrist, and ankle pain. (R. 53, 64) Edwards' claims were denied at both the initial and reconsideration levels of administrative review, (R. 13), and a hearing was held before an ALJ on May 15, 2006. (R. 13, 210-231) On June 23, 2006, the ALJ issued a decision denying Edwards' claims for DIB and SSI, finding that although Edwards' suffers from severe impairments, his claims of incapacitating pain and swelling were not wholly credible and he retains the residual functional capacity ("RFC") to do a limited range of sedentary work and, thus, was not disabled.[1] (R. 17) Specifically, the ALJ determined that Edwards can lift ten pounds frequently and twenty pounds occasionally, but can only sit about six hours and stand two hours in an eight hour work day and was limited to jobs which did not require repetitive pedal motions with the lower extremities and/or exposure to heights or machinery. (R. 17-18)

The ALJ's decision became final for the purposes of judicial review under 42 U.S.C. § 405(g) on September 29, 2006, when the Appeals Council denied Edwards' request for review. (R. 6-9) Edwards then filed this action challenging the Commissioner's decision.

---

[1] Sedentary work requires exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met. Occasionally means activity or condition exists up to 1/3 of the time and frequently means activity or condition exists from 1/3 to 2/3 of the time. http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM

## II.

Edwards argues that the ALJ improperly evaluated his complaints of pain and erred in concluding that his complaints were not credible. However, during oral argument Edwards conceded that the record is insufficient to establish that he was entitled DIB as of the date last insured, June 30, 2004. Accordingly, Edwards asks only that the Commissioner's decision as to the issue of SSI benefits be reversed.

Judicial review of a final decision regarding disability benefits under the Act is limited to determining whether the ALJ's findings "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing 42 U.S.C. § 405(g)). Accordingly, the reviewing court may not substitute its judgment for that of the ALJ, but instead must defer to the ALJ's determinations if they are supported by substantial evidence. Id. Substantial evidence is such relevant evidence which, when considering the record as a whole, might be deemed adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays, 907 F.2d at 1456; Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

## III.

Edwards testified that he has severe pain in his lower back, stomach, both knees, both wrists, and his left ankle. (R. 220) He further testified that he broke his left ankle when he fell off a porch in 2005, and since then he continues to have swelling which is so severe he has to elevate his ankle five or six times a day for ten to twenty minutes, his knees hurt so much he is only able to sit for about thirty minutes and then he needs to stand or lie down and he can only

3

stand for about ten minutes before needing to sit, and his combined impairments require him to lie down five or six times a day for thirty minutes at a time. (R. 220-223) However, he also testified that he is able to take care of his apartment and can manage cooking and cleaning chores with breaks, he watches television, and he visits with friends. (R. 223) The ALJ found that although Edwards has severe impairments which could be expected to produce some pain, Edwards' testimony concerning the intensity, duration, and limiting effects of that pain were not credible in light his treating physicians' clinical notes and the objective medical evidence. (R. 18)

When faced with conflicting evidence contained in the record, it is the duty of the ALJ to fact-find and to resolve any inconsistencies between a claimant's alleged symptoms and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Accordingly, the ALJ is not required to accept Edwards' testimony that he is disabled by pain and must lie down several times during the day, but instead must determine, through an examination of the objective medical record, whether he has proven an underlying impairment that could reasonably be expected to produce the symptoms alleged. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996) (stating the objective medical evidence must corroborate "not just pain, or some pain, or pain of some kind or severity, but the pain the claimant alleges she suffers."). Then, the ALJ must determine whether Edwards' testimony about his symptoms are credible in light of the entire record. Credibility determinations are in the province of the ALJ, and courts normally ought not interfere with those determinations. See Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989).

Although the record establishes that Edwards has severe impairments which could reasonably be expected to produce some degree of pain, the record lacks any indication that Edwards is limited by pain or needs to elevate his leg or lie down several times a day to relieve his discomfort as he testified. As a threshold matter, although Edwards is alleging a disability onset date of October 1, 2000, in his disability application Edwards noted that he was employed until 2004 and worked five days a week as a truck driver which required him to walk, stand, sit, climb, and to occasionally lift twenty pounds and frequently lift ten pounds and his medical records indicate that in December 2004 and the spring/summer of 2005 Edwards worked for a painting company. (R. 54, 102, 107, 123, 135) This gives the court pause as to Edwards' general level of credibility. Further, the medical record does not support Edwards' complaints of disabling pain.

Edwards medical record can be defined, at best, as sparse. There is one entry from 2000, related to his admission to Putman Community Medical Center Emergency Room after he was found unresponsive in his apartment after consuming twelve beers; he left the hospital without registering. (R. 174-180) There is one entry from March 2001, indicating Edwards was examined following a motorcycle accident - he had minimal injuries and was released the same day. (R. 181-194). There are no medical records from March 2001 until December 2004, when he presented at the Lewis Gale Medical Center with a sprained right ankle; again, he was treated and released the same day. (R. 135-48)

The next medical record, and apparently Edwards' only significant injury since 1987, occurred on May 11, 2005, in South Carolina, when he fell off a porch and fractured his left ankle. (R. 102-115) An x-ray revealed a complex fracture of the left ankle with abnormal

5

alignment about the tibiotalar joint space. (R. 106, 114) Internal fixation via a plate and several screws was completed the same day, and Edwards was released on May 12, 2005. (R. 98-99, 118) A physical therapy evaluation on May 13, 2005, showed that Edwards had a full range of motion in all his joints, with the exception of the left ankle; he had normal strength and grip in his arms and hands; he exhibited a 4/5 strength in both hip flexors, he had normal strength in his right leg, ankle, and foot; and he demonstrated 4/5 strength in his injured left leg. (R. 116) He was also tolerating a little weight on his left leg. (R. 116)

On June 11, 2005, Edwards presented at the Lewis-Gale Medical Center with complaints of left ankle suture pain; however, during the triage exam he advised the nurse that he had not cleaned the surgical site since the date of surgery nor had he received any follow-up care. (R. 123, 128) The surgical staples were removed, and Edwards' ankle was put into a splint. (R. 125) Edwards returned for a follow-up visit on June 21, 2005, and saw Dr. Weinraub. Edwards complained of anterior ankle joint discomfort, and on exam, Dr. Weinraub found some left ankle and dorsal midfoot edema, +1 pitting, but that his skin was warm, with no erythema[2], lymphangitis, or cellulitis, that the incisions were well-healed, and that he had limited range of motion secondary to guarding. (R. 155) An x-ray showed that the medial clear space was within normal limits; there was good internal fixation and the hardware remained tight; the ankle bones were aligned and the joint appeared to be open, clear, and symmetric; and there was only a moderate amount of soft tissue swelling on both sides of the ankle. (R. 153, 156) Dr. Weinraub

---

[2]Erythema is redness of the skin produced by congestion of the capillaries. <u>Dorland's Illustrated Medical Dictionary</u> 638 (30th ed. 2003).

6

recommended Edwards return in two weeks for another follow-up exam and x-rays and that until then he remain non-weight bearing and utilize a crutch for support. (R. 153)

Edwards returned on July 5, 2005, and again, complained that his ankle continued to hurt. On exam Dr. Weinraub found that the surgical incision was well-healed, that there was only mild edema in the ankle, and that Edwards had a limited range of motion. Again, x-rays showed the fracture sites were aligned and were healing normally. (R. 152, 154) Dr. Weinraub gave Edwards a CAM walker device to use to begin partial weight bearing, and he advised Edwards to return in two weeks to begin physical therapy. (R. 152) At his follow-up visit on July 19, 2005, Dr. Weinraub noted that although Edwards still complained of pain and he had a limited range of motion in his ankle, the edema was significantly decreased, x-rays revealed the fracture continued to heal, and there was no evidence of crepitus[3]. (R. 150) Dr. Weinraub advised Edwards to begin partial weight bearing with the CAM walker device and to progress to full weight bearing within one to two weeks and to return to the clinic in two weeks to be fitted with a tennis shoe and ankle brace. He also prescribed physical therapy two times a week for six weeks. (R. 150) There is no evidence that Edwards returned to Dr. Weinraub, that he completed any physical therapy, and/or that he sought any further treatment.

Edwards informed the state agency examining physician, Dr. Humphries, on September 14, 2005, that in 1987 he was in a motorcycle crash which resulted in him losing a kidney, a part of his pancreas, and a portion of his intestine causing the ongoing use of a colostomy. However, there are no medical records related to this accident nor are there any records in which any of his

---

[3]Crepitus is the rubbing together of bone fragments. Dorland's Illustrated Medical Dictionary 433 (30th ed. 2003).

7

alleged conditions are mentioned. Additionally, there is no evidence in the record that Edwards has been prescribed on-going narcotics to control his alleged pain; however, he advised the state examining physician that he continues to take Lortab for his pain. On exam Dr. Humphries found Edwards had a negative straight leg raise and that he had a full range of motion in his upper extremities, hips, knees, and right ankle. Additionally, he found that although there was no pitting or edema in Edwards' left ankle, he was sensitive to palpation of the ankle and dorsal foot and he still utilized a cane to ambulate. Dr. Humphries diagnosed Edwards with degenerative joint disease in his wrists, knees, and left ankle, but nonetheless determined that within three months of the evaluation Edwards would be able to stand and walk for two hours in an eight hour work day and to lift twenty-five pounds occasionally and ten pounds frequently. (R. 158-62)

A subsequent x-ray of Edwards ankle in October 2005, showed that the position and alignment of the fracture fragments was near anatomic, but that there was severe regional osteopenia.[4] (R. 166) There are no further medical records.

Although the ALJ considered Edwards' testimony as to the extent of his pain and that he needs to lie down and/or elevate his leg several times each day due to chronic pain and swelling, the ALJ found there was nothing in the record to support these claims. There is nothing in Dr. Weinraub's records which suggest Edwards' ankle related pain is so severe he must elevate his leg and/or lie down several times each day. In fact, Dr. Weinraub has never advised Edwards to elevate his ankle or lie down, and his clinical notes indicate that by the fall of 2005 he expected

---

[4]Osteopenia is reduced bone mass. Dorland's Illustrated Medical Dictionary 1336 (30th ed. 2003).

8

Edwards to be fully weight bearing on his left ankle. Additionally, as noted above, despite Edwards statements to Dr. Humphries, there is no indication in the record that Edwards has been prescribed pain medication to treat his alleged chronic pain nor that he has been advised to lie down several times each day. Accordingly, the court finds no reason to disturb the ALJ's credibility assessment. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). Further, based on a complete review of Edwards' medical history and his admitted functional abilities, the court finds there is substantial evidence to support the ALJ's determination that Edwards retains the physical capacity for some sedentary work. See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (upholding finding of no disability where plaintiff testified that she suffers from severe pain and hand problems where plaintiff was able to attend Church twice a week, read books, watch television, clean the house, wash clothes, visit relatives, feed pets, manage household finances, and perform exercises recommended by her chiropractor); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (upholding a finding of no disability where plaintiff was able to cook, shop, wash dishes, and walk to town every day).

## IV.

For the reasons stated above, the court affirms the final decision of the Commissioner and grants the defendant's motion for summary judgment.

In affirming the final decision of the Commissioner, the court does not suggest that Edwards is totally free of all pain and subjective discomfort during the period in question. However, the objective medical record simply fails to document the existence of any condition

9

which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Defendant's motion for summary judgment must be granted.

**ENTER:** This 14th day of June, 2007.

_____
Michael F. Urbanski
United States Magistrate Judge